UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANG-GYU HAHN, MD, PhD,<br><br>                              Plaintiff,<br><br>          -against-<br><br>SPRINGER NATURE LIMITED, MOLECULAR PSYCHIATRY, and JULIO LICINIO,<br><br>                              Defendants. | Docket No.<br><br>**COMPLAINT** |

Plaintiff Chang-Gyu Hahn, MD, PhD, by his attorneys, as and for his complaint against Defendants Springer Nature Limited ("Springer Nature"), Molecular Psychiatry (the "Journal") and Julio Licinio (collectively referred to as "Defendants") alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff is a current Professor of Psychiatry and Neuroscience at Thomas Jefferson University, Sidney Kimmel Medical College. He completes and publishes research as a part of his job obligations and his role as a physician scientist.

2.     Plaintiff brings this action against Defendants, who are all connected with the publication of the Journal, Molecular Psychiatry, which "publishes work aimed at elucidating biological mechanisms underlying psychiatric disorders and their treatment[1]," due to the damages Plaintiff suffered as a result of the retraction and pending publication of a Notice of Editorial Concern ("Notice of Concern" or "EEOC") regarding the articles of which Plaintiff is a co-author: Banerjee, A., Wang, HY., Borgmann-Winter, K. *et al.* Src kinase as a mediator of convergent molecular abnormalities leading to NMDAR hypoactivity in schizophrenia. *Mol Psychiatry* 20,

---

[1] *Welcome to Molecular Psychiatry*, MOLECULAR PSYCHIATRY, https://www.nature.com/mp/ (last visited May 7, 2025).

1091–1100 (2015) (the "Src Article") and Wang, HY.,MacDonald, M.L., Borgmann-Winter, K.E. *et al.* mGluR5 hypofunction is integral to glutamatergic dysregulation in schizophrenia. *Mol Psychiatry* 25, 750–760 (2020) (the "mGluR5 Article") (collectively referred to as the "Articles").

3.      Defendants have unjustly decided to retract the mGluR5 Article and intend to publish a Notice of Concern for the Src Article without scientifically valid rationale and in violation of the contracts between Defendants and Plaintiff.

4.      Defendants have improperly decided to retract the MGluR5 Article and intend to publish a Notice of Concern on the Src Articles in violation of the contracts Plaintiff signed with Springer Nature. The Src Agreement is attached as **Exhibit 1** and the mGluR5 Agreement is attached as **Exhibit 2**.

5.      Defendants have improperly decided to retract and/or threaten to issue a Notice of Concern for the Articles in violation of the Committee on Publication Ethics ("COPE") Retraction Guidelines. The COPE Retraction Guidelines are attached as **Exhibit 3**.

6.      Defendants have also improperly decided to retract the mGluR5 Article and issue a Notice of Concern for the Src Article in violation of implied contracts which were formed when Defendants agreed to and conduct a review and re-investigation process for the Articles.

7.      Defendants' actions are in direct violation of their contracts signed with Plaintiff, one of which does not include any clauses pertaining to retraction, and one of which provides for retraction only in specific situations.

8.      Defendants have also violated two critical components of the COPE Retraction Guidelines namely the standard of evidence required for retractions and the reliability and ability to make corrections to errors or concerns.

9. Defendants have repeatedly breached the restrictive covenants contained in their agreements, have misappropriated Plaintiff's confidential information, and have defamed and tortiously interfered with Plaintiff's current contract with Thomas Jefferson University, his current research and grant funding, ability to receive future research grants, his reputation, and impeding his ability to be awarded available articles and research.

10. Despite Defendants' contractual obligations, Defendants have engaged and are continuing to actively engage in taking steps to retract and/or issue a Notice of Concern of the Articles from the Journal and to publish retraction statements and/or a Notice of Concern concerning the Articles.

11. These wrongful actions by Defendants have caused significant and extreme harm to Plaintiff, including an investigation into Plaintiff and his academic integrity currently conducted by the Thomas Jefferson University and anticipated from the National Institute of Mental Health ("NIMH"), the potential loss of multiple grants up to $8.5 million for research currently being conducted and/or having already been concluded and the potential loss of the ability to obtain approval for a grant that is in process.

12. As a direct result of Defendants' actions, Plaintiff has suffered significant damage and his reputation has been severely impacted.

13. Accordingly, Plaintiff requests that this Court enter a judgment on behalf of Plaintiff and award Plaintiff all applicable damages, costs and disbursements, attorneys' fees, injunctive relief requiring Defendants to republish the mGluR5 Article and stop efforts to issue a Notice of Concern regarding the Src Article, and other and further equitable and legal relief as this Court deems proper and necessary.

## PARTIES

14.    Plaintiff, an individual, is a Doctor of Medicine and a Doctor of Philosophy and a current Professor of Psychiatry and Neuroscience at Thomas Jefferson University, Sidney Kimmel Medical College, residing in Pennsylvania.

15.    Upon information and belief, Defendant Springer Nature is a United Kingdom based corporation with a New York office located at 1 New York Plaza, Suite 4600, New York, NY 10004-1562, USA.

16.    Upon information and belief, Defendant Molecular Psychiatry, the Journal, is a Springer Nature journal with their main editorial office based in the United Kingdom.

17.    Upon information and belief, Defendant Licinio, an individual, is the Editor of Molecular Psychiatry and is based at SUNY Upstate medical University in Syracuse, New York, residing in New York.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action because Defendants are conducting business within the State of New York, the actions complained of occurred within the State of New York, the Defendants committed tortious acts within the State of New York, and Defendants have caused and continue to injure Plaintiff in New York and throughout the world.

19.    Venue is proper in this Court because all Defendants conduct business in New York County.

## PROCEDURAL HISTORY

20.    On January 15, 2025, Plaintiff's counsel filed an Order to Show Cause with Temporary Restraining Order in New York Supreme Court, New York County, Index Number

4

150766/2025, requesting that Defendants be enjoined from retracting the Articles to prevent further harm to Plaintiff. NYSCEF Docs. 1–32.

21.    On January 17, 2025, Defendants' counsel filed a Notice of Removal removing the action to the Southern District of New York and subsequently filed a removal action in the Southern District of New York, Docket Number 1:25-cv-00520-JSR, and attached the Order to Show Cause with Temporary Restraining Order as exhibits to the Notice of Removal. NYSCEF Docs. 33–46 and CM/ECF Doc. 1 and its attachments.

22.    On January 22, 2025, the Order to Show Cause Filed in New York County Supreme Court was declined for signature due to the removal action to the Southern District. NYSCEF Doc. 47.

23.    During the preliminary conference on February 13, 2025, Defendants' counsel stated their intentions to file a Motion to Dismiss. Judge Rakoff provided the parties with a briefing schedule and civil case management plan, which were subsequently filed via a docket text Order and CM/ECF Doc. 8.

24.    On February 24, 2025, Defendants' filed their Motion to Dismiss. CM/ECF Docs. 9–11 and their attachments.

25.    On March 24, 2025, Plaintiff filed his Opposition to Defendants' Motion to Dismiss. CM/ECF Doc. 12.

26.    On March 31, 2025, Defendants' filed their Reply in Support of their Motion to Dismiss. CM/ECF Doc. 13.

27.    On April 11, 2025, the parties appeared before Judge Rakoff. During oral argument, Judge Rakoff expressed his intention to dismiss the matter without prejudice permitting Plaintiff the opportunity to file an Amended Complaint.

28.     On April 14, 2025, Judge Rakoff's Order dismissing the matter without prejudice was filed via CM/ECF. CM/ECF Doc. 15.

**FACTS ESTABLISHING DEFENDANTS' LIABILITY**

**A.     Background Information Relating to The Articles**

29.     The Src and mGluR5 Articles were accepted for publication in 2014 and 2018 and finally published in 2015 and 2020 in Molecular Psychiatry, respectively.

30.     One of the co-authors of the articles, Hoau-Yan Wang, PhD, was accused by short sellers of the stocks of the company that Dr. Wang worked for, of manipulating the data with the intent to enhance financial benefit of the company. These short sellers went on a campaign to tarnish the reputation of Dr. Wang, attacking many articles where he was listed as an author. Dr. Wang is the second and first author for the Src and mGluR5 Article, respectively.

31.     Around this time, in December 2021, Plaintiff received an email from the Journal notifying him that a reader submitted concerns about scientific images within the Src Article. The Journal began an alleged investigation and on January 20, 2022, informed Plaintiff it was concluded that no action was being taken. *See* **Exhibit 4**.

**B.     Investigation Process**

**i.     *The Second Investigation***

32.     On May 19, 2022, the Journal began a new investigation relating to the Src Article and simultaneously notified Plaintiff that an investigation was beginning concerning the mGluR5 Article. *See* **Exhibit 5**.

33.     On June 30, 2022, Dr. Whitaker expressed concerns about the mGluR5 Article and the authors submitted the "original images" for the mGluR5 Article. *See* **Exhibits 6** and **7**.

34.     On August 25, 2022, Dr. Helen Whitaker provided a letter, and on August 1, 2024, Dr. Greta Scharpe provided a letter, both of which stated that retraction of the Src Article, published in 2015 and authored by 17 scientists, was being considered on the basis of concerns raised about three figures: (i) Figure 2C, (ii) Figure S5A, and (iii) Figure S6a. *See* **Exhibits 8** and **9**.

35.     In Dr. Whitaker and Dr. Scharpe's letters, they also stated that retraction of the mGluR5 Article, published in 2020 and authored by 14 scientists, was being considered on the basis of concerns raised about five figures: (i) Figure 1B, (ii) Figure 2B, (iii) Figure 5C, (iv) Figure S2b, and (v) Figure S4a.

36.     On September 15, 2022, Dr. Whitaker noted that "(t)he authors have provided a plausible rebuttal for the issue with Fig. 1B (referring to a vertical line between bands as a random artifact)" in reference to the mGluR5 Article. *See* **Exhibit 10**.

37.     It was understood by Plaintiff and co-authors that as of September 15, 2022, the remaining concerns for the mGluR5 Article were for only four figures: (i) Figure 2b, (ii) Figure 5c, (iii) Figure S2b, and (iv) Figure S4a.

38.     Of these seven figures between the two articles, the concern regarding four figures: (i) Figure 2C and (ii) Figure S5A in the Src Article and (iii) Figure S2b and (iv) Figure S4a in the mGluR5 Article arose from the same finding, namely, "Repeated patterns in the background", meant to be evidence for image manipulation.

39.     On September 11, 2022, as evidentiary proof for the "repeated patterns in the background", Plaintiff finally received analytic images of the aforementioned blots for Figures 2C and S5A in the Src Article and Figure S2b and S4a in the mGluR5 Article from Defendants. *See* Figure 2C and S5A in **Exhibit 11** and Figure S2b and S4a in **Exhibit 12A** and **12B**.

40.    On September 12, 2022, Plaintiff submitted the explanation that the "repeated patterns in the background" located in the images within the Src Articles are well known artifacts of a widely used practice in Western blotting, "Stripping and reprobing of the blots,"[2] thus should not be a concern. As for the "repeated patterns in the background" in mGluR5 article, Plaintiff submitted the explanation that those are repeated because they were images of the same location. Thus, the "repeated patterns in the background" should serve as signs of the authenticity of these images, not the source of "uncertainties".  *See* the September 12, 2022 email as **Exhibit 13**.

41.    Dr. Whitaker mistakenly considered blot images submitted in the September 12, 2022 email as examples for illustration of the fallacy of the "repeated patterns" to be "original images" and found issues and added concerns.

42.    The authors have proposed to correct the figures using the original images from the study. *See* Letter to the Editor, October 4, 2022 (**Exhibit 14** for the Src Article and **Exhibit 15** for the mGluR5 Article) and PowerPoint slides (**Exhibit 16** as referred to as "PowerPoint slides" in **Exhibit 15**).

43.    On September 13, 2022, prior counsel for Plaintiff sent a letter to Dr. Whitaker concerning the retraction of the Articles, specifically urging the Journal to:

 i.    Stop the retraction process of the Articles;

 ii.    Provide the authors with analytic images indicating "repeated patterns in the background" Figures 2C and S5 in the Src Article and Figures 1b and 2b in the mGluR5 Article;

 iii.    Allow the authors to respond to the images; and then

---

[2] *See Stripping and Reprobing Western Blots*, THERMO FISHER SCIENTIFIC, https://www.thermofisher.com/us/en/home/life-science/protein-biology/protein-biology-learning-center/protein-biology-resource-library/pierce-protein-methods/stripping-reprobing-western-blots.html (last visited May 7, 2025).

    iv.     Assess the authors' response in the presence of third-party experts; and

    v.     Reconsider the editorial decisions for the Articles.

*See* **Exhibit 17**.

44.    On January 18, 2024, Michael William Elf, Vice President and Regional General Counsel of Springer Nature for Africa, Americas, and the UK, sent a letter response stating that the Journal temporarily suspended the retraction process and that the editors reconsidered the editorial decision and confirmed that retraction of both Articles is necessary. *See* **Exhibit 18**. Mr. Elf also stated that the authors were provided with an opportunity to respond to the images, of which no explanation or clarification was provided based on the authors' responses and evidence provided.

45.    On August 28, 2024, this firm provided a letter response to Mr. Elf, reiterating the authors concerns and requesting that:

    i.     The retraction process of the Articles be suspended;

    ii.     The Journal provide a full assessment of the third-party reviewer; and

    iii.     The authors are allowed to replace the figures at-issue in both Articles in the mode of an Authors' Correction.

*See* **Exhibit 19**.

46.    On November 5, 2024, Mr. Elf responded to this firm's August 28, 2024 letter stating that the articles will be retracted in the upcoming issue and that Springer Nature and the Journal consider the matter closed. No third-party assessment of the presented data was provided, nor were any other reasoning for the retraction provided other than maintaining that the Editor in Chief's opinion stands. *See* **Exhibit 20**.

47.     On November 20, 2024, following the receipt of Mr. Elf's letter, Ms. Augello emailed Mr. Elf requesting that the parties have a telephone conversation to discuss. *See* **Exhibit 21**.

48.     On December 5, 2024, despite a flawed and improper "investigation" and outcome, Mr. Elf responded stating that the matter is considered closed and refused any attempts to speak. *See* **Exhibit 22**.

## ii.     *Defendants Provide Final Retraction Statement Request*

49.     In continuation of Defendants' refusal to speak to Plaintiff or Plaintiff's counsel, or to provide any information into the investigation process, on December 13, 2024, Dr. Patricia A. Wiley, the Publisher of Medicine and Life Sciences Journals of COPE, sent two emails concerning retraction of the Articles.

50.     The first email, dated December 13, 2024, stated that the Journal completed an independent re-review of the Src Article and maintained that retraction was the proper course of action. *See* **Exhibit 23**. No information concerning the "independent re-review" was provided. A position statement regarding the retraction of the Src Article was requested by December 20, 2024.

51.     The second email, dated December 13, 2024, also stated that the Journal completed an independent re-review of the mGluR5 Article and maintained that retraction was the proper course of action. *See* **Exhibit 24**. No information concerning the "independent re-review" was provided. A position statement regarding the retraction of the mGluR5 Article was requested by December 20, 2024.

52.     On December 18, 2024, Ms. Hulbert emailed Dr. Wiley and requested an extension of time to provide position statements concerning the Articles. *See* **Exhibit 25**.

53. Receiving no response from Dr. Wiley, on December 19, 2024, Ms. Hulbert emailed Dr. Wiley following up on the extension request to provide position statements for the Articles. **Exhibit 26**.

54. On January 9, 2025, Mr. Elf sent an email to this firm stating that the authors were provided until January 17, 2025 to provide retraction statements for the Articles.

**C.    Ongoing Communications with Defendants**

55. Throughout Plaintiff's pending litigation in the Southern District, Defendants continued to be in communication with Plaintiff concerning the pending retractions.

56. On January 29, 2025, Plaintiff's counsel provided Plaintiff's letters to the Editor in Chief, Dr. Julio Licinio, one for the Src Article and the other for the mGluR5 Article. The letters concerning the Src Article are attached as **Exhibit 27** and letters concerning the mGluR5 Article are attached as **Exhibit 28.**

57. On March 14, 2025, Defendants' counsel provided Plaintiff's counsel with a letter in response to Plaintiff's January 29, 2025 letters. Finally realizing that their re-review was flawed and retraction was improper, Defendants changed their decision for the Src Article to "Editorial Expression of Concerns" but maintained their decision for the mGluR5 Article as retraction. **Exhibit 29**.

58. On March 26, 2025, Plaintiff's counsel provided a rebuttal to Defendants concerning the Articles. **Exhibit 30**.

59. On April 9, 2025, Defendants' counsel provided a response to Defendants' letter issued March 26, 2025. In this letter, Defendants indicated that their concerns were not fully addressed because Plaintiff had not provided "raw data files" for the Articles. **Exhibit 31**.

60.    Admist these communications with Defendants, on April 17, 2025, Defendants retracted the mGluR5 Article from the Journal.[3]

61.    On April 21, 2025, Plaintiff provided another rebuttal response to Defendants concerning the Src Article. **Exhibit 32**.

62.    On April 24, 2025, Defendants' counsel emailed Plaintiff's counsel requesting position statements by the authors so they may publish the Notice of Concern for the Src Article.

63.    On May 6, 2025, Plaintiff's counsel provided a list of the authors disagreeing with the Notice of Concern for the Src Article and notified Defendants' counsel that the remainder of the authors did not provide a comment.

**D.    COPE Guidelines**

64.    Defendants are members of COPE, a committee "providing leadership and an unbiased expert voice in publication ethics."[4]

65.    Defendants Springer Nature and the Journal are members of COPE. "COPE is an advisory body which provides guidance to editors and publisher on all aspects of publication ethics."[5]

66.    To become a member of COPE, the journal, publisher, university or institution, corporation, or individual, must pay a fee to join.[6]

---

[3] *Retraction Note: mGluR5 hypofunction is integral to glutamatergic dysregulation in schizophrenia*, SPRINGER NATURE (April 17, 2025), https://link.springer.com/article/10.1038/s41380-025-02986-2.

[4] *About COPE*, COPE, https://publicationethics.org/about (last visited May 7, 2025).

[5] *Journal Editors' Code of Conduct*, SPRINGER NATURE, https://www.springernature.com/gp/editors/code-of-conduct-journals#:~:text=Springer%20Nature%20is%20a%20member,all%20aspects%20of%20publication%20ethics (last visited May 7, 2025).

[6] *Becoming a COPE Member*, COPE, https://publicationethics.org/membership/becoming-cope-member (last visited May 7, 2025).

67.    In exchange for paying the yearly membership fee, subscribers, including journals, gain the accreditation of being recognized as a member of a journal devoted to publication ethics and integrity in scholarly research and its publication.

68.    Members of COPE are understood to "follow all the latest guidance in publication integrity."[7]

69.    Springer Nature's website states that "As members [of COPE], we are committed to: (1) Adhere to their Core Practices, and (2) Follow COPE guidelines outlining how to deal with cases of potential publication misconduct."[8]

70.    Their website further states, "the Editor-in-Chief is responsible for guaranteeing, a far as possible, the quality and ethics of everything that is published in the journal," and that "[a]ll Editors work to maintain the highest standards of editorial practice for their journals and we have a clear framework of policies, processes and guidelines designed to help them achieve this."[9]

### i.    *Springer Nature Code of Conduct*

71.    The Springer Nature Code of Conduct states,

- Springer Nature Journals are members of the Committee on Publication Ethics (COPE). Editor(s) are expected to follow the COPE *Core Practices*.

- Springer Nature has responsibility to ensure that the journals it publishes adhere to editorial and publication ethics standards recommended by COPE. Springer Nature will support Editor(s) in their pursuit of adhering to such COPE standards. When dealing with publication and research ethics issues, Editor(s) are expected to follow COPE guidance and flowcharts or any guidance provided by Springer Nature (hereafter called the Publisher). The final course of action should be decided by the Editor(s). In difficult cases, or where there is no existing COPE guidance, the Editor(s) may seek advice from the Publisher, and some cases may need to be resolved in collaboration between Editor(s) and the Publisher. The Core Practices

---

[7] COPE, *supra* note 6.
[8] SPRINGER NATURE, *supra* note 5.
[9] SPRINGER NATURE, *supra* note 5.

and general guidelines and flowcharts are available from the COPE website (http://publicationethics.org).

- Editor(s) are expected to be aware of the editorial policies and information provided for authors by the Journal.

- If there is more than one Editor-in-Chief for the Journal, it is understood that the responsibility concerning Editorship of the Journal is shared between them.

### ii. *COPE Retraction Guidelines*

72.    COPE Retraction Guidelines for consideration of reactions, states that the publishers "have clear evidence that the findings are unreliable, either as a result of major error (e.g., miscalculation or experimental error), or as a result of fabrication (e.g., of data) or falsification (e.g., image manipulation)." *See* **Exhibit 3**, p. 2.

73.    COPE Retraction Guidelines also state, when determining whether retractions are appropriate, that "Retractions are usually not appropriate if . . . [t]he main findings of the work are still reliable and correction could sufficiently address errors or concerns." *See* **Exhibit 3**, p. 3.

### E.    <u>Src and mGluR5 Agreements</u>

74.    The Src Agreement is silent on any terms relating to retraction. **Exhibit 1**.

75.    The mGluR5 Agreement states,

the Author(s) agree(s) that the Licensee may retract the Article or publish a correction or other notice in relation to the Article if the Licensee considers in its reasonable opinion that such actions are appropriate from a legal, editorial or research integrity perspective.

**Exhibit 2.**

### <u>COUNT ONE</u>
### (Breach of Contract)

76.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set herein.

77.    The Src Agreement does not provide any grounds for retraction or revision of the article.

78.    The mGluR5 Agreement provides that Defendants may only retract, edit, or publish another notice of concern if the action is "appropriate from a legal, editorial or research integrity perspective."

79.    Defendants are bound to adhere to the terms of the Agreements in which they entered into with Plaintiff for publication of his respective articles.

80.    Plaintiff fully performed his obligation under the guidelines by publishing scientifically sound findings and providing the original figures related to the images in question in conjunction with explanations and additional proof solidifying the authors' scientifically sound findings.

81.    Plaintiff did not breach any of his contractual obligations nor did Plaintiff engage in any fraud or conduct warranting a default of either Agreement.

82.    Defendants were responsible for the duty of good faith and fair dealing with respect to the Agreements they entered into.

83.    Defendants breached their Agreements with Plaintiff by retracting the mGluR5 Article when there was no legal, editorial, or research integrity reason warranting retraction as per COPE Guidelines.

84.    Defendants breaches their agreements with Plaintiff by publishing a Notice of Concern for the Src Article when nothing within the Src Agreement governs retraction, correction, or publication of any notices.

85.    Defendants do not have "clear evidence" for wrongfulness of the figures in question as required by the mGluR5 Agreement (and not mentioned in the Src Agreement).

86.     The authors have provided clarification of the images in question, which were wholly ignored by Defendants, and have also offered, on multiple occasions, to correct these figures by the way of an Authors' Correction (e.g., for Figure 5C in the mGluR5 article), which were again ignored by Defendants.

87.     Except for Figure 5C in the mGluR5 Article, in which the authors acknowledged a mistake, every single finding claimed by Defendants did not rise to the level of certainty where it was concluded that there was anything actually wrong with the images, rather they were "uncertainties." In other words, Defendants did not identify what they were uncertain about within the mGluR5 Article.

88.     Defendants further failed to take mitigative steps to prevent this issue by not adhering to simple practices of asking for the raw data prior to publication, which is standard for publication journals to avoid any potential issues with publication and avoid damages and harassment from disgruntled readers.

89.     Plaintiff has been damaged by Defendants' various breaches of the agreement, by damage to his professional reputation, loss of grants, an investigation into his job position, and significant impact on future work and research opportunities including the revocation of grants Plaintiff was promised to receive and lost research opportunities.

90.     Plaintiff has suffered and will continue to suffer irreparable harm as a result of Defendants' breaches of their obligations to Plaintiff as set forth in the Agreements.

91.     Plaintiff is entitled to recover money damages in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

92.     Plaintiff is entitled to temporary and injunctive relief enjoining further breaches as well as an award of costs and reasonable attorneys' fees in prosecuting this action.

93.    Defendants' actions were intentional, willful, and malicious and justify the imposition of punitive damages.

## COUNT TWO
### (Tortious Interference with Contractual Relationship)

94.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set forth herein.

95.    As a member of COPE, Defendants have an obligation to adhere to the guidelines through the existence of an implied contract between Plaintiff and Defendants.

96.    Defendants had knowledge of the existence of the contract because they are the primary publishing company, the journal, and the Editor-in-Chief and are voluntary members of COPE.

97.    Defendants, acting without cause and due to their personal desire to preserve the reputation of the Journal due to the subsidiary actions of one of the co-authors of the Articles, have as a result, wrongfully interfered with Plaintiff's dedicated research and scientifically found, produced findings for Defendants' own benefit.

98.    As a result of Defendants' conduct, Plaintiff's reputation within the scientific and medical communities will severely diminish and impact Plaintiff's ability to receive future work and publish future articles.

99.    This will also impact Plaintiff's current career and ability to receive a raise or promotion in the future. An important and imperative aspect of the profession of teaching, specifically professors in the MD and PhD programs, is researching and publishing articles.

100.    Furthermore, professors are measured on the contents, quality, and quantity of their publications. These publications are heavily considered when interviewing or considering

17

potential candidates for promotions within their current university or college to a higher position or higher salary.

101.    Plaintiff's current and future grants have already been severely impacted due to the retraction of the mGluR5 Article and pending Notice of Concern for the Src Article.

102.    As noted, Plaintiff and his co-authors' scientific endeavor is to investigate new disease mechanisms of schizophrenia and other psychiatric illnesses, and to find new energies to treat physical losses. The Articles point to novel disease mechanisms which can be leveraged for development of a new therapeutic strategy. In fact, a direct outcome of the Src Article has been a completely newly developed approach, protein-protein interaction interfering peptide, to treat schizophrenia.

103.    Over the last five years, Plaintiff and the co-authors have been awarded three independent research grants from NIMH, called RO1s, which are directly linked to the Articles.

104.    Each RO1 grant amounted to a range from 3 to 4.5 million dollars.

105.    All grants are awarded by peer reviewers at NIMH. Retraction of the Articles will unjustly damage Plaintiff's reputation which will gravely bias and affect funding decisions and significantly harm Plaintiff's ability to receive funding and grants for future research.

106.    Defendants' intentional and unjustified conduct is motivated by ill will and malice and interferes with Plaintiff's reputation, ability to work, grants received for research, and job, and will continue to deteriorate Plaintiff's relationships with universities and institutions alike.

107.    As such, Plaintiff is currently being investigated by NIMH and has lost grants up to $5 million.

108.    But for Defendants' ill-motivated interference, Plaintiff would have the two Articles published in the molecular psychiatry Journal and would improve Plaintiff's reputation,

provide Plaintiff with greater access to continue receiving and to receive research grants for additional future research and publications, and allow Plaintiff access to publish in highly regarded scientific and medical journals.

## COUNT THREE
### (Defamation)

109.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set herein.

110.    As previously described, upon information and belief, the wrongful actions of Defendants are ongoing and have caused and continue to cause harm to Plaintiff in the damage to Plaintiff's reputation, loss of grants, and significant on the future availability of research and ability to co-author published articles describing said research.

111.    Defendants' publication of the retraction statement on the Springer Nature website for the mGluR5 Article is false and defamatory as it would reasonably allow anyone researching Plaintiff's articles to reach the false and damaging conclusion that there was an intentional manipulation of the data leading to the Defendants ultimate conclusion that the conduct warranted retraction.

112.    It is known in the scientific community that retracted articles often bear some sort of fraudulent or illegal conduct associated, i.e., image or data manipulation, falsification of experiment results, inconclusive or manipulated results.

113.    As a reasonably foreseeable, and intended result, other research publication journals and institutions providing grants have withheld or revoked future grants Plaintiff has received or is scheduled to receive. Plaintiff is being investigated by his university of employment and expected to be investigated by NIMH due to the retraction and pending Notice of Concern for the Articles.

114.    Defendants intentionally made statements concerning the mGluR5 Article which were false and implied statements of fact that Plaintiff engaged in fraudulent conduct and published these statements on the Springer Nature website.

115.    As a result of Defendants' conduct, Plaintiff, at risk of the loss of currently funded grants and loss of future grants, is being investigated by his university, and has tarnished his reputation in the scientific and medical communities.

## COUNT FOUR
### (Negligence)

116.    Plaintiff reinstates and incorporates the foregoing paragraphs of the Complaint as though fully set herein.

117.    At all material times, Defendants, through its officers, agents, servants, and employees, undertook to publish Plaintiff's publications and represent in the Journal that the publications were scientifically sound and void of any fraud or unethical conduct and to make these publications available to the world through the use of their Journal's database and other databases.

118.    At all material times, Defendants, through its officers, agents, servants, and employees, owed a duty to Plaintiff and the general public to exercise reasonable care in reviewing and preparing the Articles for publication so as to present published material that is displayed to the world with the understanding that the Journal backed Plaintiff and the co-authors and found their research to be ethical, correct, and void of errors. In particular, Defendants' decisions on both articles were made ultimately because Plaintiff could not provide the "raw data files" which they argue would have cleared their perceived "uncertainties." *See* **Exhibit 31**. These "raw data files" were generated years ago. If those files are to be such pivotal evidence in the future, they should

have been requested before the time of original publication of the articles. In fact, many journals have been in practice of such routines, such as the Journal of Clinical Investigation.

119.    Defendants had a duty to take such precautions as were reasonably necessary to protect Plaintiff's reputation in the event that the published Articles contained errors not seen in oversight by the Defendants which could cause a retraction and tarnish Plaintiff's reputation as the general public views retractions as signs of unethical or illegal conduct.

120.    At all materials times, Defendants knew, or in the exercise of reasonable care, should have known, on account of the nature and frequency in which authors and their reputations are attacked within the scientific and medical community, that publication of the Articles without taking the utmost care to review all research and check the Articles for any signs of errors constituted a danger of falsely promoting Plaintiff's work and causing the general public to believe that Plaintiff engaged in unethical and illegal conduct in which Defendants were in a superior position to appreciate such hazards and take necessary steps to prevent harm to Plaintiff.

121.    Defendants and its officers, agents, servants, and employees knew, or in the exercise of reasonable care, should have known, that Plaintiff did not have the power to make any changes to the Articles or take any measures to protect their reputations once Defendants reviewed, accepted, and published the Articles to the world.

122.    At all material times, Defendants, and its officers, agents, servants, and employees, were in a superior position to appreciate such danger and take the necessary steps to deter and prevent the harm to Plaintiff's reputation, job security, and current and future ability to receive grants.

123.    As a result of the above, at all material times, the attack on Plaintiff's Articles and calling into question Plaintiff's research and results was reasonably foreseeable to Defendants,

who were in a superior position to appreciate such hazards and take necessary steps to prevent harm to Plaintiff.

124.    Defendants breached their duty to Plaintiff, acted in a careless and negligent manner by failing to take adequate precautions and measures to properly review the Articles prior to publication.

125.    At all material times, Defendants were on notice, or in the exercise of reasonable care, should have been on notice that it is an extremely common practice for readers to attempt to find errors in articles or cause articles to be retracted due to political reasons within the scientific and medical communities.

126.    At all material times, Defendants did foresee or, in the exercise of reasonable care, should have foreseen the likelihood of a potential threat to either or both Articles.

127.    At all material times, Defendants, through its agents and employees, negligently failed to take the proper procedures governing the inspection and review of the Articles and failed to adhere to COPE Guidelines when reviewing the Articles.

128.    At all material times, Defendants, through its agents and employees, created and/or allowed to be created a hazardous condition relating to the publication of Articles which were not properly reviewed by Defendants in which a reasonable review of the Articles would have revealed the same issues brought years later by Defendants.

129.    The negligence of Defendants proximately and directly led to harm caused to Plaintiff.

130.    As a direct and proximate result of Defendants' negligence, Plaintiff was caused harm including damage to his reputation, an investigation at his University of employment caused

by NIMH, loss of current grants up to $5 million, lost of future grants up to $15 million, and loss

the ability to conduct research with Harvard University and Mount Sinai researchers.

<u>**COUNT FIVE**</u>
**(Tortious Interference with Business Relations)**

131.    Plaintiff reinstates and incorporates the foregoing paragraphs of the Complaint as

though fully set herein.

132.    Plaintiff has contracts with research institutions, scholarly journals, and Thomas

Jefferson University which are not only the basis of Plaintiff's employment but also provide

Plaintiff grant money in exchange for research conducted and published in the institution's, or

other journals', publications.

133.    Plaintiff has reasonable expectations of entering into future contracts with

institutions to receive grant money and conduct future research.

134.    Defendants have full knowledge of Plaintiff's current contracts with Thomas

Jefferson University, NIMH, and other institutions which provide Plaintiff with employment and

grant money to conduct ongoing research.

135.    Defendants have intentionally caused the Articles in which Plaintiff is a co-author

to become the subject for retraction and/or attempts for retraction due to the tarnished reputation

from illegal actions of another co-author of the Articles which bear no relation to the scientific

findings or ethical actions of the Articles.

136.    Defendants have intentionally caused Plaintiff, by means of the ongoing retraction

attempts, to suffer harm including an investigation by NIMH through Thomas Jefferson

University, loss of current grants, loss of future grants, and a tarnished reputation.

137.    Plaintiff has suffered and will continue to suffer damages due to Defendants' tortious interference with Plaintiff's business relations and contracts with his place of employment, research institutions, and publication companies.

138.    Plaintiff has also suffered and will continue to suffer irreparable harm and economic damages due to Defendants' tortious interference with Plaintiff's business relations and contracts with his place of employment, research institutions, and publication companies.

## COUNT SIX
### (Civil Conspiracy)

139.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set herein.

140.    Springer Nature Limited, the Journal, and Julio Licinio have combined for unlawful purposes.

141.    Specifically, Defendants have combined to tortuously interfere with Plaintiff's contracts and business and to cause harm his current and future business relations, employment, grants, ability to conduct research, and reputation, in violation of federal laws.

142.    Plaintiff has been damaged, and will continue to suffer damages, as a result of the unlawful conspiracy.

## COUNT SEVEN
### (Breach of Implied Contract)

143.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set herein

144.    By means of their actions, Defendants, in engaging with discussions with Plaintiff and reviewing Plaintiff's Articles to determine whether retraction was warranted, outside of the scope of the Agreements, entered into an implied contract with Plaintiff.

24

145.    Plaintiff performed his contractual obligations by providing Defendants with Article rebuttals.

146.    Defendants did not perform their contractual obligations because they failed to review the Article rebuttals and immediately retracted the mGluR5 Article.

147.    Defendants further failed to perform their contractual obligations because Defendants counsel confirmed the EEOC for the Src Article three days after confirming that they would pass the rebuttal along to their clients and without indicating that Defendants completed any review of the rebuttal to determine the EEOC.

148.    By way of Defendants' breach, Plaintiff has suffered damages including loss of current and future grants, future investigation by NIMH via his employment, harm to his reputation, and economic damages.


### COUNT EIGHT
**(Breach of the Duty of Good Faith and Fair Dealing)**

149.    Plaintiff restates and incorporates the foregoing paragraphs of the Complaint as though fully set herein

150.    At all material times, Defendants were in a contractual relationship with Plaintiff and owed a duty to Plaintiff to act in good faith and deal fairly with him.

151.    Defendants breached that duty on more than one occasion by wrongfully contracting with and failing to uphold their implied agreements with Plaintiff and by making false statements that Defendants would review the rebuttals provided by Plaintiff prior to retracting the Articles.

152.    Such acts and omissions led to Defendants' breach of their duty to deal in good faith and fairly with Plaintiff were the actual and proximate cause of harm to Plaintiff.

153.    Defendants conduct was outrageous, with their acts being done with malice or bad motive or reckless indifference to the interests of Plaintiff.

154.    Defendants are liable to Plaintiff for damages including economic damages for the harm caused to Plaintiff's current and future grants, job position, reputation, and ability to conduct future research.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests the Court to enter the following relief:

1.     Republication of the mGluR5 Article in Springer Nature's Journal Molecular Psychiatry and removal of the retraction notice;

2.     Enjoining Defendants from publishing the Notice of Editorial Concern as related to the Src Article;

3.     Awarding Plaintiff his damages in an amount to be proven at trial, with interest, costs, and reasonable attorneys' fees;

4.     Awarding Plaintiff punitive damages;

5.     Such other and further legal and equitable relief as this Court deems necessary, just, and proper Grant Plaintiff any further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury on all claims so triable.


Dated: May 7, 2025
         New York, New York


AUGELLO LAW GROUP, P.C.


By:  /s/ *Cynthia A. Augello*

Cynthia A. Augello, Esq.
260 West 36th Street, Suite 605
New York, New York 10018
332-220-3200
cynthia@augellolaw.com
*Attorneys for Plaintiff*
*Chang-Gyu Hahn, MD, PhD*